Vardaman S. DUNN, Petitioner,

v.

Jack T. STEWART (Jack T. Stuart), or
any other officer of any United States
District Court, Respondent.

Civ. A. No. 3534(J) (C).

United States District Court
S. D. Mississippi,
Jackson Division.

April 8, 1964.

Robert E. Hauberg, U. S. Atty., for Jack T. Stuart, respondent.

Charles Clark and William E. Suddath, Jr., Jackson, Miss., for Vardaman S. Dunn, petitioner.

MIZE, District Judge.

This cause is pending before the Court on a Writ of Habeas Corpus. After notice and a full hearing, and upon consideration of evidence and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

An Order for the arrest of Vardaman S. Dunn, a member in good standing of the bar of this Court for more than 25 years, was made by the United States District Court for the Northern District of Oklahoma on March 14, 1964, in Civil Action No. 5911 in that Court. This Order of Arrest is as follows:

---

"IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

HYDE CONSTRUCTION COMPANY, INC.,
 Plaintiff

vs.

KOEHRING COMPANY, ET AL
 Defendants.

CIVIL ACTION #5911
(Formerly No. 3175 U.S. D.C. Southern District of Mississippi)

ORDER OF ARREST

FILED
Mar 14 1964
Noble C. Hood
Clerk, U. S. District Court

DIRECTED TO ANY UNITED STATES MARSHAL:

"Now on this 14th day of March, 1964, Vardaman S. Dunn, having been ordered and directed to appear before this Court at 10:00 a. m. to show cause why he should not be held in contempt, and the said Vardaman S. Dunn having failed to appear as ordered and having presented no reason or excuse for his failure to so appear,

"NOW THEREFORE, you are hereby commanded to arrest Vardaman S. Dunn of Jackson, Mississippi, and bring him forthwith before the United States District Court for the Northern Judicial District of Oklahoma, in the city of Tulsa, Oklahoma.

"Dated this 14th day of March, 1964.

 "s/ Allen E. Barrow
 "United States District Judge"

This Order of Arrest was dispatched to Jack T. Stuart, United States Marshal for the Southern District of Mississippi, and was received by him on March 16, 1964, in Jackson, Mississippi. Jack T. Stuart, acting under and pursuant to said Order of Arrest, arrested Vardaman S. Dunn in Jackson, Mississippi, and took him into custody. After Vardaman S. Dunn was taken into the custody of Jack T. Stuart, a Writ of Habeas Corpus issued by this Court, directed to the said Jack T. Stuart or any other officer of any United States District Court, was served upon the said Jack T. Stuart, requiring him to have the body of the said Vardaman S. Dunn before this Court on March 20, 1964, pending which he was to be released on his own recognizance. This date has been twice extended by Orders of this Court and pending the hearing of this cause the said Vardaman S. Dunn has stood released upon his own recognizance under this Court's Writ of Habeas Corpus.

The circumstances causing the issuance of the Order of Arrest set out above are described in the following paragraphs.

On August 30, 1961, Cause No. 3175 was filed in the United States District Court for the Southern District of Mississippi by Hyde Construction Company, Inc. against Koehring Company. This was an action in personam to recover a $500,000.00 money judgment for damages for breach of warranty on a refrigerated concrete mixer. J. R. Scribner, an individual, and Dalrymple Equipment Company, Inc., a Delaware corporation, both residents of Mississippi, were summoned to answer as Chancery attachment defendants under statutes of the State of Mississippi. On September 21, 1961, Koehring Company challenged the jurisdiction of the District Court and moved to transfer the cause to Oklahoma under 28 U.S.C.A. § 1404(a). No answer was filed by Koehring Company at that time.

On September 22, 1961, Scribner and Dalrymple Equipment Company, Inc. filed their joint answer in said Cause No. 3175. Scribner denied any indebtedness to Koehring Company. Dalrymple Equipment Company, Inc. admitted an indebtedness of $8,846.51 and described an additional indebtedness of $177,-701.88, alleged to be due to Koehring Finance Company, a Delaware corporation, and it was further alleged that Koehring Company owned no interest therein. No funds were paid into the registry of the Court at that time. No bond was filed.[1]

On September 27, 1961, Hyde Construction Company, Inc. filed Cause No. 60,068 against Koehring Company in the Chancery Court of Hinds County, Mississippi. This was an action in personam to recover a money judgment in the amount of $500,000.00 for damages for breach of warranty on a refrigerated concrete mixer. It also made defendants Dalrymple Equipment Company, Inc. and Allied Equipment Company, who were summoned to answer as attachment defendants in Chancery under the provisions of Mississippi law.

From an adverse ruling filed June 19, 1962, on its motion to dismiss for lack of jurisdiction and to transfer in Civil Action 3175, Koehring Company requested and was allowed an interlocutory appeal by the District Court and the Court of Appeals for the Fifth Circuit.

Chancery Court action No. 60,068 was removable to the United States District Court for the Southern District of Mississippi, but Koehring Company elected not to remove the same. On January 30, 1963, Koehring Company elected to file

---

1. There is no requirement under the Chancery attachment proceedings in Mississippi for such attachment defendants to do anything on the return date other than to answer. Mississippi Code 1942, §§ 2729 and 2730. At the time of the filing of Civil Action No. 3175, Federal Rules of Civil Procedure did not permit a suit to be commenced by way of Chancery attachment in the United States District Court. It only permitted the use of such attachment procedure as an ancillary remedy where basic jurisdiction existed independently under pertinent Federal statutes. Rule 4 of F.R.Civ.P. was not so amended until 1963.

an answer in the Chancery Court proceedings. In its sworn answer Koehring Company did not plead specially to the jurisdiction of the Court on the ground that the attachment proceedings were not instituted in conformity with Mississippi law, but instead, it defended generally on the merits of the action. On January 30, 1963, Dalrymple Equipment Company, Inc. answered the attachment process served upon it by the Chancery Court. It swore that it was not indebted to Koehring Company in any amount as of 10/2/61 (approximately the time of the service of the process), but stated that at that time Koehring Company was indebted to Dalrymple Equipment Company, Inc. in the amount of $1,950.95. Dalrymple Equipment Company, Inc. further described certain equipment indebtedness due to Koehring Finance Company, a Delaware corporation, but alleged that Koehring Company had no interest therein. This answer also made oath that on 11/30/62 Dalrymple Equipment Company, Inc. was indebted to Koehring Company in the amount of $18,477.44, and that it owed Koehring Finance Company $133,101.88, but that Koehring Company owned no interest therein. Dalrymple Equipment Company, Inc. further swore in its answer that whatever interest Koehring Company had in any funds in Dalrymple Company's hands had already been attached in Civil Action No. 3175 in the United States District Court. Comparing Dalrymple Company's sworn answer in the District Court of 9/22/61 and its sworn answer in the Chancery Court of 1/30/63, it is noted that the status of its debt position to Koehring Company and to Koehring Finance Company was not static, but showed some change on each date for which answer was made.

On September 19, 1963, an opinion was rendered by the United States Court of Appeals for the Fifth Circuit. It made no decision of Koehring Company's Motion to dismiss for lack of jurisdiction, but determined that the District Court should be ordered to transfer the case to Oklahoma under 28 U.S.C.A. § 1404(a) if this Court had jurisdiction, or under 28 U.S.C.A. § 1406(a) if the Court lacked jurisdiction. This opinion is reported at Koehring Co. v. Hyde Const. Co., 5 Cir., 324 F.2d 295. Hyde Construction Company, Inc. petitioned the Court of Appeals for a Rehearing.

On December 16, 1963, Koehring Company pursued a statutory discovery procedure available in the Chancery Court by propounding extensive interrogatories, which are the equivalent of taking testimony.[2] *On the same date*, December 16th, Koehring Company filed a motion for injunction in the United States Court of Appeals for the Fifth Circuit, seeking to enjoin the proceedings in the Chancery Court. Between December 16, 1963 and March 11, 1964, the date trial commenced, the docket of the Chancery Court shows that Koehring Company invoked that Court's jurisdiction on six occasions by pleadings variously seeking additional answers to Interrogatories, Inspection of Documents, Dismissal or Stay, and a Continuance. At a cost of more than $5,000.00, Hyde Construction Company, Inc. supplied the testimony required by Koehring Company's written interrogatories, in the Chancery Court.

On January 4, 1964, Hyde Construction Company, Inc. filed a response to Koehring Company's motion for injunction in the Court of Appeals, praying that the motion be denied and that the Court of Appeals send the case to the District Court of Mississippi for examination into changed conditions without the requirement that the case be transferred to Oklahoma. The Chancery Court re-set Cause No. 60,068 for trial, beginning March 9, 1964 at 2:00 o'clock P. M.

On January 27, 1964, the following Order was entered by the United States Court of Appeals for the Fifth Circuit:

> "On consideration of appellants' motion for injunction, and of appellee's response thereto,

2. Section 1712, Mississippi Code of 1942.

"IT IS ORDERED that appellants' motion for injunction be denied, without prejudice to appellants' right to apply to the District Court to which the case was remanded for transfer back."

On about February 15, 1964, the mandate of the Court of Appeals reached this Court. Hyde Construction Company, Inc. filed a motion seeking to have this Court, the Court to which the case was remanded, take proof upon "changed conditions warranting a transfer of this cause back from the State of Oklahoma." Hyde Construction Company also filed an alternative Notice of Dismissal. This Court interpreted the mandate of the Court of Appeals to require the District Court in Oklahoma to consider any changed circumstances warranting transfer back to Mississippi, but the Court was of the opinion that Hyde Construction Company, Inc. had an absolute right under Rule 41(a) (1) (i) to notice the dismissal of this cause of action. At that time no answer had been filed. Neither side mentioned it, so this Court was not aware that an instrument entitled "Answer" but captioned in the prospective proceedings in Oklahoma had been previously mailed to Hyde Construction Company's attorneys.

On March 6, 1964, on the ex parte motion of Koehring Company, the Court of Appeals for the Fifth Circuit ordered this Court and Hyde Construction Company, Inc. to show cause why a Writ of Mandamus or other appropriate order should not be issued to make effective the intent of its mandate of January 27, 1964. Apparently, the Court of Appeals thought at that time that this Court had, contrary to the spirit of its mandate, granted a *discretionary* dismissal of the cause of action [See Rule 41(a) (1) (ii)], which it had not. Pending the determination of the question, the Court of Appeals enjoined the parties from proceeding in the State Court. After an adversary hearing on March 10, 1964, the Court of Appeals issued an Order mandamusing this Court and its Clerk to transfer this cause to Oklahoma immediately. The Order provided that pending the entry of the Order of Transfer by this Court and the physical filing of the record in Oklahoma, that the Court of Appeals' Order "shall constitute a transfer to enable the parties to present the matter to the District Court in Oklahoma." The order vacated the Court of Appeals' previous injunction of the State Chancery Court proceedings. Certified copies of this Order were first delivered to counsel for both parties in Houston, Texas at approximately 2:00 o'clock P.M. on Tuesday, March 10, 1964.

On the afternoon of March 10, 1964, after the Order of the Fifth Circuit delivered to the parties' counsel in Houston, Texas, Koehring Company's Jackson, Mississippi counsel made their third Motion to Chancellor J .C. Stennett in Cause No. 60,068, requesting that Court to stay its proceedings, then set for 2:00 o'clock P.M., March 11, 1964, on account of the pendency of the Federal Court proceedings. This motion was refused by the following order:

"Came on this day to be heard the third application of the defendant to stay the proceedings in this cause, and the Court finding that this cause is fully at issue on its merits and has been set for trial since 2:00 P.M. on Monday, March 9, 1964, but has been delayed from day to day pending various maneuvers of defendant in the Federal Court and the Court further finding that the parties have been standing by for trial at great inconvenience and expense and that a *further delay would amount to extreme hardship and injustice and that there is no further cause for delay and that this cause should be tried forthwith.*

"IT IS ORDERED AND ADJUDGED that the plaintiff's last application be and the same is hereby denied and the parties are ordered and directed to proceed with the trial of this cause commencing at 2:00 P.M. on Wednesday, March 11, 1964.

"So ordered on this the 10th day of March, 1964.

s/ J. C. Stennett
Chancellor".

(Emphasis Added.)

On the morning of March 11, 1964, in Tulsa, Oklahoma, the Honorable Allen E. Barrow, United States District Judge for the Northern District of Oklahoma, commenced a hearing on the verified motion of Koehring Company for a temporary restraining order and a permanent injunction against the continuation of the State Chancery Court proceedings. At 1:59 o'clock P.M. that same day, Judge Barrow announced to counsel for Hyde Construction Company, Inc. and Koehring Company, both of whom were present by counsel only, that a temporary restraining order was granted. At 2:00 o'clock P.M. in Jackson, Mississippi, the trial of Cause No. 60,068 was commenced before the Honorable J. C. Stennett, Chancellor. Later in the afternoon of March 11, 1964, a formal temporary restraining order, which was contingent upon the posting of a $10,000.00 bond, was executed by Judge Barrow and filed with the Clerk of his Court. At 3:30 o'clock P.M. on March 11, 1964, an approved bond in the sum required by the temporary restraining order was filed with the Clerk of the Oklahoma District Court. This formal restraining order was served on Charles Clark and David H. Sanders, attorneys for Hyde Construction Company, Inc., in Tulsa, Oklahoma, at 5:20 o'clock and at 5:25 o'clock P.M., respectively, on March 11, 1964. The bond was served upon the same attorneys at 9:35 o'clock A.M., March 12, 1964.

On March 12, 1964, the Koehring Company filed a petition styled "Hyde Construction Company, Inc., Plaintiff vs. Koehring Company et al, Defendants" in Civil Action No. 5911, moving the District Court of Oklahoma for an Order to show cause why Hyde Construction Company, Inc. and Vardaman S. Dunn should not be punished for contempt. There was attached to this petition an affidavit of John F. Friedl, which recited that shortly after proceedings began in Judge Stennett's Court, an attorney for Koehring Company announced to the Court that he had been informed that "Judge Barrow of the U. S. District Court, Northern District of Oklahoma, has just granted a restraining order prior to 2:00 o'clock against Hyde and its attorneys." The lawyer stated that he did not know whether the restraining order also restrained Koehring Company, but he requested that the trial of the Chancery case be deferred pending an opportunity to find out about the full terms of the Order. The affidavit states that Attorney Dunn was asked by Chancellor Stennett if, under these circumstances, he desired to proceed, to which he replied that he perceived that under the previous day's Order of the Chancery Court, they were required to go forward, whereupon the Court ordered the parties to proceed. Whereupon, Attorney Dunn continued to read from the answers of Hyde Company to Koehring Company's interrogatories. At approximately 5:05 o'clock P.M., Chancellor Stennett interrupted the proceedings, which were still in progress, and read a telegram from Judge Barrow, notifying Judge Stennett of the restraining order. Judge Stennett stated that in the light of the telegram he would defer further action until March 23rd, and again asked Mr. Dunn if, in view of this development, he wished to proceed. Mr. Dunn gave substantially the same announcement as he had previously given, and the proceedings in the case were continued.

On the opening of Court on the morning of March 12, 1964, Chancellor Stennett made a lengthy announcement reviewing the developments of the previous day. The complete text of this announcement was as follows:

"Before we start, Mr. Cox, the Court has been down since before eight o'clock, probably before most of you had your first cup of coffee, making a complete study and review of the file and the proceedings heretofore. We find since the last part of January, or it could have been the first day of February, anyway

far before the calling of the docket, this cause was pre-set for trial beginning at two o'clock on March 9th and for the rest of that week. I believe it was Monday, at the convenience of the Circuit Court of Appeals on a matter of comity, the Court agreed to reset it for Tuesday and then again on Wednesday at two o'clock, and it was set by Order of the Court, and the Order was not in the file as of yesterday and the Court did not have it before it, the Order of March 10th. That Order directed the trial to begin on Wednesday, March 11th, was entered at a time when there was no restraining order whatsoever in effect. During the progress of the trial yesterday, late in the day, a telegram was handed to the Court and was read, which you gentlemen all remember, having to do with information that an injunction had been entered restraining all parties, the complainant and attorneys, from proceeding further. Of course there was considerable confusion and misunderstanding about it, which usually is a result of last minute efforts on the part of parties to inject something new and different into the cause, and after thinking the entire situation over since we adjourned yesterday afternoon and further study early this morning, the Court now announces that in view of the fact this Court has jurisdiction of the cause, parties and subject matter and this Order of March 10th having been entered and the entire file having been reviewed and studied, this Court now directs all parties, both complainant and defendant, to abide by its Order of March 10th and proceed with the trial of this cause or continue with the trial of this cause as directed by the Order of this Court as of March 10th, 1964. I would like to let the record show that anything or any information said to the contrary as of yesterday is stricken from the record in its entirety.

"Now, gentlemen, you may proceed."

The trial of Cause No. 60,068 in the Chancery Court of Hinds County, Mississippi was continuously in progress from 2:00 o'clock P.M., March 11, 1964, until the taking of proof in said trial was completed on March 25, 1964, at 12:30 P. M.

On March 12, 1964, on a consideration of Koehring Company's above mentioned petition, Judge Barrow issued an Order to Show Cause, which bore the style "Hyde Construction Company, Inc., Plaintiff vs. Koehring Company et al, Defendants" and was filed in Civil Action No. 5911. It ordered Hyde Construction Company, Inc. and its attorney, Vardaman S. Dunn, to appear before the Court in Tulsa, Oklahoma on the 14th day of March, 1964, at 10:00 o'clock A. M. to show cause why an order should not be made holding the two of them "in contempt of this Court and to be dealt with accordingly." The Court further ordered that Hyde Construction Company, Inc. and Vardaman S. Dunn be served with copies of this Order by service on Hyde Construction Company's attorneys in Tulsa, Oklahoma, or by the United States Marshal or in both manners. The Marshal's returns show that Hyde Construction Company, Inc. was served by serving Charles Clark, attorney for Hyde Construction Company, Inc., in Tulsa, Oklahoma, at 5:30 o'clock P. M., March 12, 1964, and that on the 13th day of March, 1964, the Order to Show Cause and petition attached thereto were personally served on Vardaman S. Dunn in Jackson, Mississippi by the United States Marshal for this District. The Marshal in Jackson, Mississippi was unable to find Hyde Construction Company for service here. The Marshal's return of the process made and attempted in Jackson, Mississippi, was filed in the District Court in Oklahoma on the 18th day of March, 1964. The petition for Order to Show Cause does not characterize the contempt charged as criminal contempt, nor does the Order to Show Cause so characterize these proceedings. In fact, the word "crimi-

nal" does not appear at any place in either said petition or Order to Show Cause.

On the 14th day of March, 1964, proceedings were held in the United States District Court in the Northern District of Oklahoma under the Notice to Show Cause. Hyde Construction Company, Inc. appeared specially by an attorney, Mr. David Sanders of Tulsa, Oklahoma, and challenged the jurisdiction of the Court to proceed. Judge Barrow announced at the outset of these proceedings that they were criminal contempt proceedings (T. 2). The attorney appearing specially for Hyde Construction Company, Inc. objected in open court to the giving of notice at that time in a civil proceeding of a criminal proceeding, and stated "This comes as a complete surprise to me, that this is of a criminal nature in any way." (T. 13).

At the conclusion of this hearing on March 14, 1964, Judge Barrow announced from the bench:

"After the hearing duly had the Court finds that Hyde Construction Company, Incorporated, and their attorneys, Charles Clark and Vardaman Dunn, are held to be in civil contempt of this Court's order issued in the form of a restraining order on Wednesday, March 11th.

"The matter of damages, if any, to Koehring Company will be considered at a later date by the Court, at which time evidence will be taken.

"Very well, they are so held to be in contempt." (T. 67)

On March 14, 1964, Judge Barrow signed the above Order of Arrest.

Vardaman S. Dunn was never present before the District Court of the Northern District of Oklahoma, nor was he represented by counsel of record in that District during any part of the above proceedings.

There have been filed in this Court certified copies of every pleading and proceeding before Judge Barrow from the time Civil Action No. 5911 was lodged with the Clerk of the U. S. District Court for the Northern District of Oklahoma through and including the entire day on which the order of arrest for Vardaman S. Dunn was made by Judge Barrow. In addition to that, the Court has before it complete transcripts of all presentations of this matter to Judge Barrow. These transcripts disclose that no evidence or proof of any kind was tendered to him or received in evidence at any of these hearings, except for an affidavit of John F. Friedl, a staff attorney for Koehring Company, which was tendered by the Defendant, Koehring Company, into evidence on March 14, 1964 and received in evidence by the Court; the transcript of Judge Stennett's statement of March 12, 1964, set out above, which was tendered by Plaintiff Hyde Company and refused at the same hearing on March 14, 1964; and the testimony of William A. Denny, House Counsel for Koehring Company, who testified briefly on March 14, 1964 (T. 63–66), concerning statements made by Vardaman S. Dunn in the Chambers of Judge Stennett several days prior to any order of the District Court for the Northern District of Oklahoma in Cause No. 5911. The record from the United States District Court for the Southern District of Mississippi in Cause 3175 was not received by the Clerk of the United States District Court for the Northern District of Oklahoma until March 16, 1964.

The record of all proceedings before the District Court of the Northern District of Oklahoma prior to the issuance of the Temporary Restraining Order by Judge Barrow on March 11, 1964 disclose that said order rested solely on the pleading in the form of a verified motion by Koehring Company, filed that morning. That motion does not disclose any contest over common property or funds between the United States District Court for the Southern District of Mississippi, the United States Court of Appeals for the Fifth Circuit, or the United States District Court of the Northern District of Oklahoma and the Chancery Court of the First Judicial District of Hinds County, Mississippi in any part of the

proceedings conducted in any of these courts.

The records of all proceedings before the District Court of the Northern District of Oklahoma during the entire period from the filing of Cause 5911 through and including the date of the Order of Arrest disclose no proof of any common property or fund in litigation in said Courts, much less proof that there is any conflict between these jurisdictions over the possession or control of any such res.

In its Motion for a Temporary Restraining Order and Injunction, Koehring Company swore that the trial of the action in the Chancery Court of Hinds County would subject it to harassment, undue hardship and immediate and irreparable injury. The only fact bases set out to support this conclusion were (1) the limited discovery procedures available in the Chancery Court; and (2) that certain answers to interrogatories by Hyde which Koehring Company had secured through the State Court proceeding in Cause No. 60,068 showed that out of twenty persons listed as witnesses, three resided in Jackson, Mississippi, eight resided in or near Tulsa, and all but two others resided closer to Tulsa, Oklahoma than Jackson, Mississippi. Neither the verified motion nor the exhibit thereto disclose the date as of which this information as to residence of witnesses was given.

Viewing the entire matter in full perspective, the court finds that Vardaman S. Dunn did not act out of any contempt of or lack of respect for Judge Barrow or the District Court of Oklahoma. On the contrary, he was caught in a web of conflicting allegiances and between the powers and orders of courts of concurrent jurisdiction which permitted him, at best, only a brief and unreal "choice". His decision had to be made at a time when Chancellor Stennett had already found and observed in a Court Order that further delay of the Chancery Court proceeding would amount to extreme hardship and injustice and that there was no further cause for delay. I am compelled

to conclude that Vardaman S. Dunn had no considered lack of respect for or contempt of the order of Judge Barrow, and had no chance or expectancy of personal gain or profit from following the course which he did. On the contrary, the attorney correctly acted out of what he considered to be his duty as an attorney to protect his client's proper interest. It is with deference that I have concluded that I must disagree with my colleague Judge Barrow in his action in ordering Petitioner's arrest.

The party moving the Court for a Temporary Restraining Order has the burden of establishing at least a prima facie showing that it is entitled to such relief. 43 C.J.S. Injunctions § 192b, p. 897. A studied examination of the entire record before Judge Barrow fails to disclose proof of a prima facie case of entitlement to injunctive relief. It consisted only of a brief verified motion. Statements of counsel during arguments, unsupported by any record evidence, are, of course, not evidence and therefore cannot be proof. Eg. Curtis v. Rives, 75 U.S.App.D.C. 66, 123 F.2d 936, 941, and Sims v. Greene (CA 3), 161 F.2d 87, 88. Indeed, it is the universal rule that arguments of counsel must be confined to the evidence in the record when they are arguing facts. 88 C.J.S. Trial § 181a, p. 352.

This lack of proof is made acute by the consideration that the Temporary Restraining Order was addressed to the prohibition of proceedings in a State Court. Section 2283 of Title 28 U.S.C.A., provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

This statute permits courts of the United States to act only in three excepted situations. The first is where authorized by Act of Congress, but this exception is not pertinent here; the second is where necessary in aid of its ju-

risdiction; the third is where necessary to protect or effectuate its judgments. An injunction addressed only to the party litigants and not to the court itself does not circumvent the prohibition of the statute. Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537; H. J Heinz Co. v. Owens (CA 9), 189 F.2d 505.

■ Careful examination of the proof before the Court discloses no showing whatever that the injunctive processes of that court were necessary in aid of its jurisdiction. The verified motion does allege that the suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi was filed by the plaintiff "for the same cause of action". This, without more, constitutes no interference whatsoever with the jurisdiction of the courts of the United States. Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100; Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600, and Harkin et al. v. Brundage et al., 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457. See also Denver-Greeley Valley Water Users Assn. v. McNeil (CA 10, 1942), 131 F.2d 67; Red Rock Cola Co. v. Red Rock Bottlers (CA 5, 1952), 195 F.2d 406; Smith & Son, Inc. v. Williams (CA 5, 1960), 275 F.2d 397; and Byrd-Frost, Inc. v. Elder et al. (CA 5, 1937), 93 F.2d 30, 115 A.L.R. 342.

As the First Circuit said in Commerce Oil Refining Corp. v. Miner (CA 1, 1962), 303 F.2d 125:

"The mere burden on a party of being 'subjected to litigation in other courts' is precisely what comity requires the federal court to disregard as a ground for intervention."

■ For all of these reasons, it appears to this Court that § 2283 so clearly deprived Judge Barrow of any power to enjoin the proceedings in the Chancery Court of Hinds County, Mississippi that his restraining order was void. While this Court does not read § 2283 to be jurisdictional, it is certainly a positive congressional mandate and limitation on the equity powers of District Courts; and where, as here, there is no substantial ground establishing a right to contravene that power, any injunction issued in clear disregard of it would not support civil or criminal contempt proceedings. In re Green's Petition, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198; Ex parte George, 371 U.S. 72, 83 S.Ct. 178, 9 L. Ed.2d 133. The applicability of § 2283 to in personam actions (See Kline v. Burke Construction Co., supra) and actions where the two concurrent jurisdictions are not drawn in conflict by litigation over a fund (See the cases cited by the 10th Circuit in Denver-Greeley Valley Water Users Assn. v. McNeil, supra) have been so often adjudicated as to clearly bring this present case outside the scope of United States v. United Mine Workers of America, 330 U.S. 258, 67 S. Ct. 677, 91 L.Ed. 884 and the authorities cited therein.

■ The record before this Court in this case, as it relates to the case in the Chancery Court of Hinds County, Mississippi, demonstrates that the Chancery Court action, being between a Mississippi corporation and a Wisconsin corporation, then contending that it was not doing business in Mississippi, was fully removable. The presence of the attachment defendants in nowise affected removability. Cramer v. Phoenix Mutual Life Ins. Co. (CA 8), 91 F.2d 141, cert. den. 302 U.S. 739, 58 S.Ct. 141, 82 L.Ed. 571, rehearing den. 302 U.S. 778, 58 S. Ct. 263, 82 L.Ed. 602. Having elected not to remove or attempt to remove the Chancery Court action, Koehring Company should now be estopped in equity to assert that any irreparable injury occurred to it because discovery procedures available in the Chancery Court of Mississippi were not as efficacious as procedures which would have been available in the Federal forum.

■ A deliberate examination of the pleadings in Civil Action No. 5911 (formerly Civil Action No. 3175), and in the State Chancery Court proceeding No.

60,068, discloses that both suits, insofar as the Defendant Koehring Company is concerned, were *in personam* actions. Only a money judgment was sought as to them. Black's Law Dictionary, 4th Ed. 899; 21A Words & Phrases, pp. 278–287; Ravesies v. Martin, 190 Miss. 92, 199 So. 282, 285. The Chancery Court attachment proceedings, appurtenant to the principal litigation there and the Chancery attachment proceedings in the U. S. District Court, involved one common attachment defendant, Dalrymple Equipment Company, Inc., a Delaware corporation qualified to do business in the State of Mississippi.

 Attachments in Chancery in the State of Mississippi are unique proceedings in the field of attachment law in the sense that the service of the attachment defendant does not bring any fund into the possession, custody or control of the Court, no monies are paid into the registry of the Court, and no bond is required. Mississippi Code 1942, §§ 2729–2734. Garnishment will not lie against the attachment defendant at the initiation of the action. As the Supreme Court of Mississippi pointed out in Gulf Refining Co. v. Mauney, 191 Miss. 526, 3 So.2d 844, the Chancery attachment defendant occupies no security position at all; "[h]e is simply a defendant with all the rights and privileges as such and should simply be summoned to answer the suit as any other defendant is summoned." The distinctions between Mississippi Chancery attachments and attachments at law are also discussed in Mid-South Paving Co. v. Trinidad Asphalt Mfg. Co., 197 Miss. 751, 21 So.2d 646, 647. Sequestration, injunction and delivery to the Plaintiff under bond are all permissible under the Chancery attachment statutes, but none of these procedures were requested or accomplished in either suit.

 Under the laws of Mississippi, Koehring Company could have entered a special appearance in the Chancery Court to challenge the jurisdiction acquired by attachment. It chose not to do so but defended generally, thus granting to the Court general jurisdiction of the person. Mobile & Ohio R. Co. v. Swain, 164 Miss. 825, 145 So. 627. When it made this election it made the issue of any quasi in rem proceedings as to Dalrymple Company mainly moot. Cf. Pennoyer v. Neff, 95 U.S. 714, 725, 24 L.Ed. 565. In no sense had any fund been taken into the hands of the U. S. District Court in Mississippi by making Dalrymple an attachment defendant. When Dalrymple Company's answers are considered together, they disclose that on the three separate dates on which statements of account between Dalrymple Company and Koehring Company were made, a different set of debt relationships existed on each occasion. Obviously, no funds were actually frozen in Dalrymple Company's hands.

 The attachment did not create any conflict between the concurrent State and Federal jurisdictions. Byrd-Frost, Inc. v. Elder, supra, is completely analogous to the proceedings here involved.

 Dalrymple Company's answer in the Chancery Court advances the plea to that court that it has already been attached in the Federal Court proceedings and a certified copy of the Complaint in the Federal Court action is made an exhibit to Dalrymple's answer in the Chancery Court. Thus, if any funds *had* been taken into custody by the Federal Court proceeding, the Chancery Court, after this notice, would have been bound not to deal with these funds. This Court, of course, must presume that the Chancery Court of Hinds County would take no proceedings which would in any way affect property which was in fact already seized under the proper processes of the U. S. District Court. Rather, the presumption is that the Chancellor would deal correctly with any such claim when, as and if he would take steps to possess or control any part of the attachment subject matter. Douglas v. New York, N. H. & H. Railroad Co., 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747; Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152. Indeed, even an allegation by Koehring Company that the Chancel-

lor stood ready to proceed as to the attachment defendants would fall far short of warranting the intervention of equity. Watson v. Buck, 313 U.S. 387, 400, 61 S. Ct. 962, 85 L.Ed. 1416.

In this Court's opinion, a most incongruous circumstance surrounds this entire injunction proceeding which obviously was not apparent to Judge Barrow in the brief time he had to reflect on this matter before he was pressed to act. The moving party for an injunction of the State Court proceedings before him was the Defendant Koehring Company. It is absolutely inconceivable to this Court how Koehring Company could assert any damage whatsoever because of the existence of the Chancery Court attachment proceedings against the defendant Dalrymple. Dalrymple's sole purpose as a defendant in both the State and Federal proceedings was that on appropriate final order of either court it might become a stakeholder to aid or secure any judgment which *the Plaintiff Hyde Construction Company* might recover against Koehring Company. With Koehring Company's general appearance in the Chancery Court subjecting itself personally to that Court's general jurisdiction, any judgment as to Dalrymple Company, if granted, would cause no injury whatsoever to Koehring Company. Because of its election not to remove the Chancery Court proceedings, Koehring is estopped to claim injury for lack of discovery, if that ever was a ground. On calm reflection, it appears that Koehring Company's last minute convocation of the emergency injunctive processes of the Oklahoma District Courts was on a completely insubstantial if not a frivolous basis, both on the question of conflicting jurisdiction between the State and Federal Courts and on the basis of irreparable *injury*

This Court is not unmindful of the burden placed upon Judge Barrow, who was pressed for action by Koehring Company without the benefit of any record and with only a scant few hours to arrive at a decision before the supposed deadline. The fact that this Court may reflect in a more leisurely manner is merely an attestation to the merits of the Writ of Habeas Corpus and is certainly not intended as any reflection upon Judge Barrow whose actions were taken on the spur of the moment.

Although both of the adversary parties were present by counsel before Judge Barrow, the record before this Court shows that the transfer originated at some time after 2:00 o'clock P.M. on Tuesday, March 10, 1964 in Houston, Texas when the U. S. Court of Appeals for the Fifth Circuit entered its writ under § 1651 of Title 28 U.S.C.A., and at some time between 9:45 o'clock A.M. and 10:00 o'clock A.M. on Wednesday, March 11, 1964 the hearing on the Temporary Restraining Order was begun in Tulsa, Oklahoma, approximately 515 miles away, and the order itself was announced by the Court at 1:59 o'clock P.M. While both parties managed to have counsel physically present before Judge Barrow in Tulsa, Oklahoma, it can hardly be considered that the Temporary Restraining Order was issued otherwise than as an order without a hearing. In Sims v. Greene, supra, the Third Circuit stated:

> "Notice implies an opportunity to be heard. Hearing requires trial of an issue or issues of fact. Trial of an issue of fact necessitates opportunity to present evidence and not by only one side to the controversy."

The Court in the Sims case also took notice of the requirements of Rule 52(a) making mandatory findings of fact and conclusions of law in injunction proceedings. The requirements of Rule 65(b) are explicit in their requirement for a hearing. This hearing must take place "at the earliest possible time" and "takes precedence of all matters except older matters of the same character."

The proof before this Court shows that the Koehring Company, on three different occasions, invoked the processes of the Chancery Court of Hinds County, Mississippi, requesting that Court to stay the action there until the completion of the trial in the Federal

Court. On each of these occasions there was no pending injunction by any Federal Court and on each occasion Koehring Company's motion was denied. In such a situation, where a party invokes the jurisdiction of one court of concurrent jurisdiction, it should elect to be bound by the decision of that forum; and its proper choice for relief from what it considers to be an incorrect order is by appeal or through the invocation of some interlocutory process of an appellate court having jurisdiction over that forum. It is improper for it to seek to annul the decision it secured by obtaining from the second court of concurrent jurisdiction a substitute remedy by way of injunction. 21 C.J.S. Courts § 501, p. 768; Hinton v. Seaboard Air Line Railway Co., (CA 4) 170 F.2d 892, cert. den. 336 U.S. 931, 69 S.Ct. 739, 93 L.Ed. 1092. Cf. Callanan Road Imp. Co. v. U. S., 345 U.S. 507, 73 S.Ct. 803, 97 L.Ed. 1206.

■ The foregoing reasons would suffice in this Court's opinion to determine the invalidity of the order of arrest and to require this Court to grant petitioner his immediate freedom under the Great Writ of Habeas Corpus. The extent of this writ's availability and the circumstances in which it is required to issue were treated extensively by the Supreme Court of the United States in the recent case of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Mr. Justice Brennan, speaking for the Court, described it as the most celebrated writ in English Law. Referring to Bushell's case, Vaughan, 135, 124 Eng.Rep. 1006, 6 Howell's State Trials 999 (1670), Justice Brennan pointed out that Habeas Corpus reaches judicial as well as executive restraints and that one committed for contempt may be freed by its operations. The Court also cited with approval from Bacon's Abridgment:

> "[I]f the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge him * * * ; and the commitment is liable to the same ob-

jection where the cause is so loosely set forth, that the court cannot adjudge whether it were a reasonable ground of imprisonment or not." (Emphasis by the Court).

I am instructed by this opinion that Habeas Corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and, although every form may have been preserved, opens the inquiry whether they have been more than an empty shell.

■ The writ is available to any person imprisoned as a result of an action of a court even though the court has general jurisdiction, if the presence of some adverse influence has caused the opportunity for a fair trial and determination of issues to miscarry.

The Court is of the opinion that procedural aspects of the order of arrest equally require the petitioner's freedom.

■ The arrest order, set out at length above, is captioned in Civil Action No. 5911 as an order betwen private litigants. This was also true of the petition for order to show cause, and the order to show cause, which gave notice of the hearing from which this order of arrest emanated on March 14, 1964 in Tulsa, Oklahoma. Not once in any of these instruments does the word "criminal" appear. Applying the time-honored tests of jurisprudence to this order of arrest, as well as all of the precedent procedures which support it, it must be characterized as a civil procedure and order. None of the requisite elements made mandatory by Rule 42(b) of the Federal Rules of Criminal Procedure are present. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S. Ct. 492, 55 L.Ed. 797.

Considered then as a notice of arrest or commitment for civil contempt, it cannot legally effect the imprisonment or detention of petitioner.

Rule 4(f) of the Federal Rules of Civil Procedure, provides:

> "(f) Territorial Limits of Effective Service. All process other than

a subpoena may be served within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. In addition, persons who are brought in as parties pursuant to Rule 13(h) or Rule 14, or as additional parties to a pending action pursuant to Rule 19, may be served in the manner stated in paragraphs (1)—(6) of subdivision (d) of this rule at all places outside the state but within the United States that are not more than 100 miles from the place in which the action is commenced, or to which it is assigned or transferred for trial; and persons required to respond to an order of commitment for civil contempt may be served at the same places. A subpoena may be served within the territorial limits provided in Rule 45. As amended Jan. 21, 1963, eff. July 1, 1963."

The notes of the Advisory Committee demonstrate precisely what the 1963 amendment was intended to accomplish. The committee there stated:

"In those situations (including commitment for civil contempt) effective service can be made at points not more than 100 miles distant from the courthouse in which the action is commenced, or to which it is assigned or transferred for trial."

This Court can take judicial notice of the fact that Jackson, Mississippi, where the marshal's return shows the petition to show cause, the show cause order, and the order of arrest were all served on Vardaman S. Dunn, is more than 100 miles from Tulsa, Oklahoma where these processes originated.

Mitchell v. Dexter, 1 Cir., 244 F. 926, recognized by the Advisory Committee as valid authority, when Rule 4(f) was revised, is still controlling as to the invalidity of the civil order here.

The Writ of Habeas Corpus is granted and the Marshal is directed to release Vardaman S. Dunn from the void Order of Arrest forthwith.